UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

___________________________

UNITED STATES OF AMERICA,

Plaintiff,

Criminal Action
No. 09-10324-GAO

V.

September 21, 2011
1:58 p.m.

BRIAN J. FEBONIO,

Defendant.

___________________________

TRANSCRIPT OF CHANGE OF PLEA OF BRIAN J. FEBONIO

BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.

UNITED STATES DISTRICT COURT

JOHN J. MOAKLEY U.S. COURTHOUSE

1 COURTHOUSE WAY

BOSTON, MA 02210

DEBRA M. JOYCE, RMR, CRR
Official Court Reporter
John J. Moakley U.S. Courthouse
1 Courthouse Way, Room 5204
Boston, MA 02210
617-737-4410

APPEARANCES:

FOR THE GOVERNMENT:

KENNETH G. SHINE, ESQ.
United States Attorney's Office
1 Courthouse Way
Boston, MA 02210
617-748-3686

FOR THE DEFENDANT:

LENORE GLASER, ESQ.
Law Office of Lenore Glaser
One Commercial Wharf N.
2nd Floor
Boston, MA 02211
617-753-9988

P R O C E E D I N G S

(The following proceedings were held in open court before the Honorable George A. O'Toole, Jr., United States District Judge, United States District Court, District of Massachusetts, at the John J. Moakley United States Courthouse, 1 Courthouse Way, Boston, Massachusetts, on September 21, 2011.

The defendant, Brian J. Febonio, is present with counsel. The Assistant U.S. Attorney is present.)

02:06 THE CLERK: For a change of plea in the case of United States of America v. Brian Febonio, docket 09-10324.

Would counsel identify yourselves for the record.

MR. SHINE: Your Honor, good afternoon. Kenneth Shine on behalf of the United States government.

MS. GLASER: Good afternoon, your Honor. Lenore Glaser for Mr. Febonio.

THE COURT: Okay. And Mr. Febonio is present.

I understand this is to be a change of plea?

MS. GLASER: That is correct, your Honor.

02:07 THE COURT: Without a plea agreement?

MS. GLASER: It's with a verbal agreement. Do you want me to --

MR. SHINE: Simple, there is no plea agreement. We have an understanding what the government's recommendation will be, but there is no plea agreement.

THE COURT: Okay.

MS. GLASER: Your Honor, we should probably put on the record for your information that our agreement has three parts -- correct me if I misstate it, Mr. Shine -- that, first of all, the government's recommendation will be 110 months of incarceration; the government will recommend the third point for acceptance of responsibility; and the government will not file any additional charges that arise out of the circumstances and facts of this case.

02:08 MR. SHINE: That's accurate, your Honor.

THE COURT: Okay. Very good.

Why don't you inquire.

THE CLERK: Mr. Febonio, please raise your right hand.

(Defendant sworn in by the clerk.)

THE CLERK: With respect to criminal action 09-10324, you have previously pled not guilty to Count One of a one-count indictment. Do you now wish to change your plea as to that count, sir?

THE DEFENDANT: Yes.

02:08 THE CLERK: Count One, which charges 18 USC section 2113(a),(d), armed bank robbery, the grand jury charges that on or about September 18, 2009, at Peabody, in the District of Massachusetts, Brian J. Febonio and Michael J. Peters, defendants herein, by force and violence and by intimidation, did take from the person and presence of another, money in the

amount of $26,443, more or less, belonging to, and in the care, custody, control, management and possession of Sovereign Bank, 300 Andover Street, Peabody, Massachusetts, the deposits of which were then insured by the Federal Deposit Insurance Corporation; and in committing the aforesaid offense, Brian J. Febonio or Michael J. Peters did assault and put in fear the lives of other persons by the use of a dangerous weapon, to wit, a firearm. All in violation of Title 18 United States Code sections 2113 (a), (d) and Title 18, United States Code, Section 2.

02:09

With respect to Count One, how do you now wish to plead, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Mr. Febonio, I'm going to ask you some questions now about your decision to plead guilty to this offense. If you don't understand any of the questions I ask, let me know, I'll try to make them clearer. I don't want you to try answer questions you're not sure of as I'm asking, and if that should be the case, just let me know, and we'll clear up any misunderstanding right away. Okay?

02:10

THE DEFENDANT: Yes, Judge.

THE COURT: Will you state for the record your full true name.

THE DEFENDANT: Brian J. Febonio.

THE COURT: What is your date of birth?

THE DEFENDANT: 6/29/68.

THE COURT: And where were you born?

THE DEFENDANT: Salem, Massachusetts.

THE COURT: What's the highest level of formal education you completed?

THE DEFENDANT: GED.

THE COURT: When was that?

THE DEFENDANT: That was in Pennsylvania in 2008.

THE COURT: In your adult life what kinds of employment have you had?

02:10

THE DEFENDANT: I have been an assistant plumber and a roofer.

THE COURT: Have you ever been treated for any mental illness or disturbance or are you currently suffering from any that you're aware of?

THE DEFENDANT: Not that I'm aware of, sir.

THE COURT: Today are you taking any medications of any kind that might interfere with your clear-headedness and your ability to understand what's going on?

02:11

THE DEFENDANT: No, not at all.

THE COURT: Now, you're charged in this indictment with the crime of armed bank robbery. A conviction of this offense carries substantial criminal penalties, the possibility of substantial criminal penalties, including incarceration for up to 25 years, a fine of up to $250,000, and order of

restitution in the amount alleged to have been taken in the robbery, which in this case is approximately $26,500. There is also in connection with any federal sentence of incarceration a period of what's called supervised release after the period of incarceration. The person is released from custody but remains under supervision of a probation officer. During that time there can be restrictions or limitations on what the person otherwise but for the sentence would be free to do. There can also be affirmative obligations, things that you must do, to be in compliance with your supervised release terms, like providing information, perhaps in the case of substance abuse issues taking drug tests and participating in programs, and so on. That can be for a period of up to five years following any period of incarceration. And finally, there is a mandatory assessment that's made on any conviction of a felony in the sum of $100.

So that's the range of penalties you become exposed to on conviction of the offense that you are offering to plead guilty to. Do you understand that?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: Now, as a person facing a criminal charge that carries the possibility of such substantial penalties, you have some important rights that you are giving up by pleading guilty, including among them and important among them is the right to have a jury trial and have the jury decide whether

you're guilty with what the government charges you with here or not. On the jury would be 12 people who would constitute a jury. They would be chosen from a pool of potential jurors here at the courthouse. Those people would be summoned to be available, and in this sitting of the court they are people who live in the eastern part of Massachusetts, east of Worcester County. They would be randomly summoned. From that group, 12 people would be chosen here in the courtroom with a process that you and your lawyer, as well as the government's lawyer, would have a part in.

02:13

When the jurors had been chosen and sworn, the government would be required to produce evidence in the trial in support of the charge made against you. You'd have the right and the opportunity during the trial to challenge or contest the government's evidence.

You'd have the right to have any witness against you appear in the courtroom where that person could be cross-examined, questioned about the testimony.

You'd have the right to present evidence of your own that might tend to show you were not guilty or might simply raise questions about or cast doubt on the reliability of the government's case.

02:14

After all the evidence had been presented, the jurors would be asked to decide whether on that evidence you had committed the offense of armed bank robbery as alleged in the

indictment or not. They'd be told that they could convict you only if they were convinced of your guilt beyond a reasonable doubt. And if they had a reasonable doubt about whether you were guilty of this offense or not, you'd be entitled to the benefit of that doubt, and they would be required to find you not guilty. Their verdict would have to be a unanimous one, meaning that all 12 jurors would have to be convinced by the government's evidence beyond a reasonable doubt.

So you have a right to have a jury trial along the

02:14 lines I've just summarized for you, but by pleading guilty, you are giving up that right. You understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: You also have the right guaranteed by our Constitution not to incriminate yourself or to testify against yourself. By pleading guilty, of course you do that. You testify in a way, but of course the significance of your plea is that if it's accepted, it becomes alone a basis for finding you guilty without a trial of this offense. So you have the right not to incriminate yourself, but by choosing to plead

02:15 guilty you are giving up that right. You understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Have you made the decision to waive your right to a trial by jury and waive your right against self-incrimination, have you made those decisions after a full opportunity to consult with your lawyer about that choice?

THE DEFENDANT: Yes, your Honor.

THE COURT: And are you satisfied that your lawyer has answered whatever questions you've had to your satisfaction?

THE DEFENDANT: Yes.

THE COURT: Now, if I find you guilty by accepting the plea, after accepting the plea, we'll continue the case for sentencing at some time in the future at which time we'll have some materials presented that will bear on the question of what a sentence should be. Some of those materials will be in the form of the presentence report, which has already, as I understand it, been partially prepared by probation. The presentence report will present information about the facts underlying the offense charged here and also information about you. In addition, the presentence report will suggest an application of the United States sentencing guidelines to see what recommended sentence might emerge from the sentencing guidelines.

Have you talked about the sentencing guidelines and how they work with Ms. Glaser, your attorney?

THE DEFENDANT: Yes, I have, your Honor.

THE COURT: So you understand what the guidelines do is take account of the features of the offense and features of your personal background, including, importantly, criminal history, and on the basis of those particulars make a recommendation for a range of sentence that is much narrower

and somewhat focused and expressed in a term a range of months, that recommendation being somewhere within the larger term authorized by the statute; that is, under the statute, the possibility of incarceration is a 25-year range, zero to 25. The guidelines will have a much narrower range somewhere in that 25-year range and will suggest an appropriate sentence is one in that range. Do you understand that's how they work in general terms?

THE DEFENDANT: Yes.

02:17 THE COURT: So that it can be -- the guidelines do not control, they're not required to be followed, but they can be influential, and they can be an important factor in deciding on an appropriate sentence. So determining what the guidelines say can be significant. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And that's something that we will determine at the time of the sentencing hearing. In addition to the presentence report, materials that I will consider may include things submitted by you, things submitted by the government, perhaps a statement from the Sovereign Bank, and so on.

02:18

At this point I don't have any of that information and so it is not possible for me to predict today what your sentence is likely to be. I will not make that judgment until I have and have reviewed all the materials that I've just

referred to. So as you plead guilty, you don't know what the bottom line is, you don't know what the actual outcome is going to be in terms of a sentence, so there's some uncertainty.

If at the time of sentencing you think that the sentence imposed is an unlawful one in some respect or an unreasonable one, you will have the right to appeal and to challenge the sentence and to see if you could get the sentence changed on an appeal. What you won't be able to do if you're dissatisfied with the sentence is ask to going back to being not guilty. Your dissatisfaction with a sentence will not be a reason or a basis for moving to withdraw your plea of guilty today. If I accept the plea today and find you guilty, that part will be settled, you'll be convicted of the offense. The sentencing issues will be dealt with on their own terms at the appropriate time. Do you understand that?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: Okay.

(Discussion off the record.)

MS. GLASER: Your Honor, can I just have a minute?

THE COURT: Yes, go ahead.

(Defendant conferred with counsel.)

MS. GLASER: Thank you, your Honor.

THE COURT: Okay. Before we began or at the beginning of this hearing Ms. Glaser outlined three things which the government has told you about the positions it will take on

sentencing, and would you just confirm for me that you were paying attention when she did that?

THE DEFENDANT: Yes, I was.

THE COURT: Okay. So those are things you are taking into account in deciding to plead guilty, I take it --

THE DEFENDANT: Yes.

THE COURT: -- the government's commitments in those respects; is that right?

THE DEFENDANT: Yes.

02:21 THE COURT: Apart from those three things, are you relying on any other assurances or promises or commitments from the government in deciding to plead guilty?

THE DEFENDANT: No, your Honor.

THE COURT: Is anyone pressuring you or pushing you into pleading guilty when you really don't want to?

THE DEFENDANT: No.

THE COURT: Is this your own personal decision?

THE DEFENDANT: Yes.

THE COURT: Okay. Mr. Shine, will you summarize the 02:21 evidence that would support a conviction of this offense?

MR. SHINE: I would, your Honor.

Your Honor, if the case were to go to trial, the government's evidence would show the following: On Friday, September 18, 2009, 9:30 in the morning, two masked, armed individuals entered the Sovereign Bank in Andover,

Massachusetts. Sovereign Bank was at the date of the robbery an -- and still is an FDIC insured institution. Robber number one, later identified as Mr. Brian Febonio, climbed over a teller's counter while displaying an automatic firearm, ordered the tellers to empty their cash drawers. As Febonio was collecting the money from behind the drawer, robber number two, later identified as Michael Peters, was seen in surveillance pointing his weapon at other employees and ordering them to the ground.

02:22 Febonio stuffed the money that he received from the tellers into a black backpack, jumped back over the railing, and both the individuals fled the scene into a parking lot.

The bank surveillance cameras were functioning and operating at the time of the robbery and images of the robbers and their weapons were captured and recorded. Surveillance photographs were outside the bank. That showed two individuals going to a black four-door, what turned out to be a Chrysler Sebring.

An employee, who was out having a cigarette, also 02:22 observed them going to that car, was able to write down a partial license plate. The two individuals got into the vehicle and left the scene at a high rate of speed.

A very short period of time later a black Chrysler Sebring with Massachusetts plates on it was located empty in a nearby parking lot. It was determined that the plates on the

vehicle were actually stolen from another vehicle that lived in East Boston. But they took the VIN number off the Sebring, and through a series of events over three or four days traced it back to Maine through four other type ownerships until eventually it was determined that the car was sold to an auto lot which was in Lynn Massachusetts.

Armed with the surveillance photographs, the FBI and local police went to that auto lot and after some period of time showing the pictures, the individuals at the auto lot said 02:23 that individual was Brian Febonio, and that individual, Brian Febonio, had bought the car September 18th, which was one day before the robbery.

Armed with this information, a complaint was issued against Mr. Febonio for armed bank robbery in this U.S. District Court.

A couple of days later, Mr. Febonio, through information, was thought to be in a motel in New Hampshire. Police set up surveillance with the FBI, and they observed a young woman exiting the motel. They stopped the young woman, 02:24 got some information from her. She indicated her name and indicated, yes, in effect, Brian Febonio was in that motel room. They waited a few more minutes, and Mr. Febonio left the room. He was taken into custody without incident.

The police and the FBI went into the room looking for the other individual, who they didn't know at that time, and

made observations of certain things throughout the room, many of those things consistent with the bank robbery; that is, stacks of money, clothing, backpacks, ammunition, a neck warmer similar to the one worn by the individual robbing the bank, hats, gloves, nylon running pants, and other those things.

They also found a prescription bottle, and the prescription bottle was the name Mike or Michael Peters. They asked Mr. Febonio for information. Mr. Febonio provided no information. They ran a DMV information on the prescription bottle, came back to an individual, they took the picture of the individual, showed the individual's picture to the woman who left the room, and she identified the co-defendant Mr. Peters. Mr. Peters was located a short time later in New Hampshire and was taken into custody without any statements or without any incident.

That would essentially be the government's case.

Additionally, a post-robbery audit was conducted by the bank, and it revealed that at the time $26,433 was taken during the robbery.

02:25 That will be the government's case.

THE COURT: Mr. Febonio, did you listen to the summary of what the government would seek to prove at trial?

THE DEFENDANT: Yes.

THE COURT: Are those facts essentially true about your participation in these events?

THE DEFENDANT: Yes, your Honor.

THE COURT: And are you pleading guilty to this charge of armed bank robbery because, in fact, you committed the offense you are charged with?

THE DEFENDANT: Yes, your Honor.

THE COURT: Have you understood all the questions I've had for you?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions?

02:25 THE DEFENDANT: No, I don't.

THE COURT: Okay. I will accept the plea. I find it's informed, intelligently offered and voluntary and there is a factual basis for the conviction. Based on the plea then, I find the defendant guilty of the offense charged in Count One of the indictment.

Now, with respect to a date for sentencing, since maybe we can hear from probation, since the --

MS. GLASER: Your Honor, I spoke with --

THE COURT: -- the report is partially prepared.

02:26 MS. GLASER: She recommended, and we agreed, the U.S. Attorney and I agree as well, that the full twelve weeks is a good recommendation. So we would all ask for a date in the normal course.

THE COURT: All right. Okay.

THE CLERK: So we'll set sentencing down for Tuesday,

December 21st at 2:00.

MS. GLASER: That's fine, your Honor.

MR. SHINE: That would be terrific. Thank you very much, your Honor.

THE COURT: Okay. Thank you. We'll be in recess.

THE CLERK: All rise. Court is in recess.

(Court adjourned at 2:27 p.m.)

- - - - - - - - - - - - -

CERTIFICATION

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter to the best of my skill and ability.

/s/Debra M. Joyce
Debra M. Joyce, RMR, CRR
Official Court Reporter

November 14, 2011
Date