UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 09-10324-GAO

UNITED STATES OF AMERICA,

v.

BRIAN J. FEBONIO,
Defendant.

OPINION AND ORDER
March 23, 2016

O'TOOLE, D.J.

The defendant, Brian Febonio, pled guilty to one count of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d). He was sentenced to a term of 110 months in prison, followed by five years of supervised release. He has moved to vacate his sentence pursuant to 28 U.S.C. § 2255, arguing that he did not receive effective assistance of counsel on several grounds, including counsel's failure to file a timely appeal on his behalf, alleged failure to contest the inclusion of a "guilty filed" disposition for resisting arrest in his criminal history calculation, purported assent to a six-level enhancement for "otherwise us[ing]" a firearm pursuant to United States Sentencing Guideline § 2B3.1(b)(2)(B), and purported failure to advocate for downward departures. See Strickland v. Washington, 466 U.S. 668, 687 (1984).

Febonio first contends that he specifically asked counsel to file a notice of appeal, but counsel ignored his request and failed to file a direct appeal within the requisite fourteen-day period following the entry of judgment. With regard to this claim, I received an affidavit from Febonio (dkt. no. 71) and from his former counsel (dkt. no. 70), and conducted an evidentiary

hearing on February 11, 2016 at which both Febonio and his former counsel testified. Febonio was represented by appointed counsel at the hearing.

In his affidavit and at the hearing, Febonio claimed that he asked his former counsel to file an appeal via telephone from the Essex County Correctional Facility ("ECCF") within the fourteen-day period following his sentencing. Febonio introduced ECCF telephone records in support of his claim. The telephone records showed two relevant outgoing telephone calls from Febonio to counsel: a three-minute call thirteen days after sentencing and an eleven-minute call fifteen days after sentencing. Febonio testified that in the first call, he requested counsel to file an appeal, and in the second call, he learned that counsel had not filed an appeal as instructed.

Febonio's counsel—who had been privately retained to represent him at sentencing[1]—testified that he did not recall what had been discussed in the identified telephone calls. However, he testified that it would have been his normal practice to file an appeal if the client had requested one and that he would have filed an appeal if Febonio had asked him to do so. He recalled that Febonio expressed satisfaction with his sentence, which was at the low end of the applicable Sentencing Guidelines range.

It is important to note that counsel's representation of Febonio did not conclude with the imposition of sentence in this case. He continued to represent him (as retained counsel) in a separate supervised release revocation proceeding pending before a different judge. Those proceedings concluded with a judgment of revocation entered March 9, 2011. See J. of Revocation, United States v. Febonio, Cr. No. 03-10002-DPW (D. Mass. Mar. 9, 2011), ECF No. 37.

---

[1] Febonio serially had three prior appointed counsel, one of whom represented him at his change of plea hearing. After pleading guilty, Febonio retained the attorney whose performance he now challenges to represent him at sentencing and his prior lawyer withdrew.

Febonio sent counsel at least ten letters between February 2011 and October 2011. During that time period, the letters focused on achieving the return of certain personal property seized by police at his arrest. In none of those letters did Febonio mention an appeal (or failure to appeal) in any way. The first letter that discussed the issue of an appeal was dated February 26, 2012, well over a year after what was, on his telling now, his counsel's failure to file an appeal though directly asked to do so. In that 2012 letter, Febonio wrote "I am hopeing [sic] you could [illegible] me with a letter stating that I did infact [sic] ask you within the 14 day [illegible] to file a notice of direct appeal from Essex County Corrections via inmate phone, as I am fighting for my life." (Feb. 11, 2016 Ev. Hearing Gov't Ex. 1 at 21.) Febonio subsequently sent additional correspondence to the same effect.

Based upon the affidavits, testimony, and paper exhibits offered in connection with Febonio's § 2255 petition, I do not find credible Febonio's claim that he asked counsel to file an appeal on his behalf. Although the timing of the telephone calls, occurring at the time the appeal period was expiring, is consistent with a possible discussion of an appeal, Febonio's subsequent behavior is inconsistent with that claim. Febonio continued to be represented by the same counsel over the next few months in the revocation proceeding. He also sent counsel many letters in the year after his sentencing and prior to February 2012 that made no mention of the appeal—neither inquiring about its status nor expressing any frustration at counsel's neglect. The history of this case shows that Febonio has not been shy about voicing his dissatisfaction when he felt that an attorney was not adequately representing his interests; sentencing counsel was Febonio's <u>fourth</u> attorney to represent him in connection with this case.[2] Yet it was more than eight months after he says his instruction to file a notice of appeal was ignored that he first raised with the Court (not

---

[2] That said, the Court does not impute all changes of counsel Febonio's dissatisfaction.

counsel) any issue about a neglected instruction to appeal, and it took him even longer to raise the matter with counsel in the February 2012 letter asking for a supporting statement.

There is also an inherent implausibility in Febonio's claim. Filing a notice of appeal is a relatively simple act that would not have involved a substantial investment of time or resources by counsel. There is nothing in the factual record that suggests a reason why, having been directly instructed to file a notice of appeal, counsel simply would not have complied with the instruction. Even if counsel were to think that an appeal would be meritless or even frivolous, the ordinary instinct would be to beat the filing deadline to preserve the possibility of an appeal and then continue discussions about prosecuting the appeal later. Indeed, as noted, counsel testified that his normal practice would have been to file a notice of appeal if instructed.

Finally, Febonio's credibility is not helped by the fact that two other of his present claims, discussed below, are flat out contradicted by the record. In sum, Febonio has not met his burden of proving as a factual matter that he instructed counsel to file a notice of appeal. His claim that counsel was ineffective for neglecting to timely file an appeal as requested is without merit.

Febonio next argues that but for counsel's deficient performance, his "guilty filed" disposition for resisting arrest in state court would not have counted in his criminal history, and under the United States Sentencing Guidelines he would have been placed in Criminal History Category IV, rather than V, resulting in a lower guideline range. In fact, however, counsel *did* argue that the offense should not be counted, including in his objections to the Presentence Report ("PSR"), in his sentencing memorandum, and at the sentencing hearing (PSR Def.'s Objection #1; Def.'s Sentencing Mem. at 1-2 (dkt. no. 46); Dec. 21, 2010 Tr. of Disposition at 6-8 (dkt. no. 49) (under seal).) The offense was properly counted over counsel's objection.

Febonio also argues that counsel was ineffective for neglecting to contest a six-level enhancement for "otherwise us[ing]" a firearm during the course of the bank robbery in favor of a five-level enhancement for "brandish[ing]" the firearm. See U.S. Sentencing Guidelines Manual § 2B3.1(b)(2). At the change of plea hearing, the government stated that Febonio "climbed over a teller's counter while displaying an automatic firearm, [and] ordered the tellers to empty their cash drawers" and that his co-defendant "point[ed] his weapon at other employees and order[ed] them to the ground." (Sept. 21, 2010 Tr. of Change of Plea of Brian J. Febonio at 14 (dkt. no. 53).) Other recitations of the facts indicate that Febonio actually leveled the firearm at the tellers, as opposed to generally displaying it. For example, the statement of offense conduct in the PSR stated that Febonio "climbed over a teller's counter, displayed a firearm, pointed the firearm at the tellers, and ordered the tellers to empty their cash drawers," while his co-defendant "pointed his weapon at the employees and ordered them to the ground." (PSR ¶ 2.) Similarly, at sentencing, the government, referring to "supporting documentation," reiterated that the firearm "was actually pointed at various individuals who went to the ground . . . after they had the weapon pointed at them." (Dec. 21, 2010 Tr. of Disposition at 5.) In the absence of any objection by the defendant, I accepted as true the facts as set forth in the PSR and assigned a six-level enhancement ("otherwise used") instead of a five-level enhancement ("brandishing"). See Fed. R. Crim. P. 32(i)(3)(A) ("At sentencing, the court . . . may accept any undisputed portion of the presentence report as a finding of fact . . . .").

Febonio has failed to show that counsel was ineffective for neglecting to object to the application of the six-level enhancement. Even if there was some confusion as to Febonio's pointing of his weapon, there is no ambiguity in the record that his co-defendant did level his

weapon at the employees while ordering them to the ground.[3] Under these circumstances, the application of the "otherwise used" enhancement was appropriate. See, e.g., United States v. Lasseque, 806 F.3d 618, 624 (1st Cir. 2015) (upholding § 2B3.1(b)(2) enhancement for co-defendant's reasonably foreseeable brandishing or possession of weapon during bank robbery), petition for cert. denied, 2016 WL 532656 (U.S. Mar. 21, 2016) (No. 15-8084); United States v. Nguyen, 246 F.3d 52, 55-56 (1st Cir. 2001) (upholding § 2B3.1(b)(2) enhancement and noting that "all that mattered was whether [the defendant] should have foreseen . . . that a firearm would be possessed during" the robbery); cf. United States v. Burgos-Figueroa, 778 F.3d 319, 321 (1st Cir. 2015) (upholding § 2D1.1(b)(1) enhancement and noting that for the "enhancement to attach, a defendant need not be caught red-handed: the enhancement applies not only where a defendant himself possessed a firearm but also where it was reasonably foreseeable to the defendant that firearms would be possessed by others during the conspiracy").

Additionally, while the government at Febonio's change of plea hearing was perhaps ambiguous in its factual proffer regarding Febonio's use of the weapon[4] and Febonio now claims he did not point the weapon at anyone, it is not possible to evaluate on the information presented

---

[3] Febonio's co-defendant agreed, pursuant to a plea agreement, to a six-level enhancement for pointing a firearm at bank employees during the robbery.

[4] Febonio pled guilty pursuant to a "verbal agreement" whereby the government agreed to recommend 110 months of incarceration, to recommend a three-point reduction to the offense level for acceptance of responsibility, and to not bring additional charges arising from the circumstances and facts of the case. (Sept. 21, 2010 Tr. of Change of Plea at 3-4.) But even had Febonio pled guilty pursuant to a plea agreement with a stipulation of facts, I would still not have been limited to those facts but rather could have, with the aid of the PSR, determined the facts relevant to sentencing. See U.S. Sentencing Guidelines Manual § 6B1.4(d). Febonio himself recognized at his change of plea hearing that I would take into consideration facts in the PSR about the underlying events when determining the appropriate sentence. (Sept. 21, 2010 Tr. of Change of Plea at 10-11.) Further, the government's agreed-upon recommendation was the bottom of the applicable guideline range including a six-point enhancement, suggesting that the defendant was aware of the prosecutorial objective at the time of his change of plea.

whether counsel could have made a credible argument against an "otherwise used" enhancement. As noted, the government said it had documentation that supported an "otherwise used" finding. It is likely that defense counsel was aware of that documentation. For example, the crime was captured on surveillance tape; perhaps the tape (or other discovery materials reviewed by counsel) made such an argument imprudent. On the available record, we simply do not know. It is clear that counsel need not make all possible sentencing objections, particularly those that would reduce counsel's credibility. Cf. Gordon v. United States, 518 F.3d 1291, 1300 (11th Cir. 2008) (noting that counsel "may decide, for strategic reasons, not to object" to even an obvious error and that if "counsel reasonably believes that correcting the error will actually cause greater harm to his client, perhaps by creating an unfavorable impression of counsel or the defendant in the eyes of the judge or jury, counsel's failure to object would not constitute deficient performance"). From all that appears, the ultimate decision not to dispute the factual basis of the enhancement was likely the sort of tactical choice that falls "within the range of competence demanded of attorneys in criminal cases." See Lombardi v. United States, 48 F.3d 1211, at *3 (1st Cir. 1995) (per curiam) (unpublished table decision) (finding that where petitioner's admissions of involvement in relevant conduct were captured on tape, counsel was not ineffective for failing to object to its consideration and "thereby risk, *inter alia*, foregoing the reduction for acceptance of responsibility").

Febonio also appears to claim that counsel did not argue for downward departures at sentencing based upon certain agreed-upon reasons, including his family circumstances and issues related to his drug addiction. Febonio's claim, however, is again belied by the record, which shows that counsel did advance arguments related to the deaths of his brothers, his elderly parents, and his history of substance abuse and efforts to control his addiction.

Febonio's remaining claims, including that counsel failed to retrieve the petitioner's personal property, failed to correct the restitution amount, failed to ask for a deferral of payments until the commencement of supervised release, and misrepresented himself as a federal sentencing specialist are either irrelevant to or not cognizable in a § 2255 motion, are duplicative of the claims already discussed, or fail to identify any specific error or prejudice of constitutional significance flowing from the alleged error.

For the foregoing reasons, the defendant has not sustained his burden of showing that counsel's conduct fell below the standard of reasonably effective assistance. See Strickland, 466 U.S. at 687. His Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (dkt. no. 55) is therefore DENIED.

Finally, because the defendant has not "made a substantial showing of the denial of a constitutional right," see 28 U.S.C. § 2253(c)(2), no certificate of appealability shall issue.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge